# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-0947

Jacob Kalman, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided     December 21, 2004     )

*Sean Kendall*, of Boulder, Colorado, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel, and *Lavinia Derr*, all of Washington, D.C., were on the brief for the appellee.

Before IVERS, *Chief Judge*, and GREENE and KASOLD, *Judges*.

KASOLD, *Judge*:  Veteran Jacob Kalman appeals through counsel a September 13, 2002, decision of the Board of Veterans' Appeals (Board) that dismissed his appeal on the basis that he had withdrawn his Substantive Appeal to the Board.  Mr. Kalman requests reversal, arguing that the Board erred in its determination that the Substantive Appeal had been withdrawn because that determination did not comply with the regulatory requirements.  Appellant's Brief (Br.) at 6-8.  The Secretary argues that the Board's decision was supported by a plausible basis in the record and urges the Court to affirm.  Secretary's Br. at 5-8.  For the reasons set forth below, the Board's decision will be reversed and the matter remanded.

## I. BACKGROUND

Mr. Kalman served on active duty in the U.S. Air Force from October 1956 to March 1960. Record (R.) at 8.  Four months after service, he claimed service connection for residuals of anterior-

chest-wall trauma, which was granted with a noncompensable rating. R. at 40-43, 62-63. In early 1999, Mr. Kalman sought a compensable rating for his service-connected anterior-chest-wall trauma and sought service connection for, inter alia, hiatal hernia, psoriasis, bipolar disorder, and obsessive-compulsive personality disorder. R. at 65-66, 73-74, 78-80. A VA regional office (RO) denied the claims (R. at 130-35), and Mr. Kalman filed a Notice of Disagreement (R. at 141, 152). Mr. Kalman was subsequently awarded service connection for a bipolar disorder. R. at 2, 274.

In June 2000, during a hearing before the RO, Mr. Kalman verbally perfected his appeal to the Board by submitting his testimony during the hearing in lieu of a written Substantive Appeal. R. at 206-07. In January 2002, the RO sent to Mr. Kalman a letter informing him that his appeal was perfected as to his claims for, inter alia, service connection for psoriasis and obsessive-compulsive personality disorder and for his claim for an increased rating for residuals of his service-connected anterior-chest-wall trauma. R. at 285. The RO also stated: "The only issue that remains relative to your appeal inquiry, which you must clarify, is whether you want a Board of Veteran's [sic] Appeals' [sic] . . . Travel Board Hearing or a [Board] Video Conference . . . ." R. at 285. On January 22, 2002, Mr. Kalman responded by letter, stating: "[Y]ou refer to 'the only issue that remains to your appeal inquiry, which you must clarify.' [sic] Since you did not specifically name *that issue*[,] I reluctantly have to assume that it is the chest[-]wall trauma . . . . *That is the only issue remaining* . . . ." R. at 288 (former emphasis added; latter emphasis in original). At some point, Mr. Kalman did request a video-conference hearing.

At the Board video-conference hearing, a Board member indicated that the issue before the Board was "increased rating for bipolar disorder," to which Mr. Kalman's representative replied: "No, there was some chest trauma in service [for] which he was given a [0%] rating . . . . They found out that it was misdiagnosed. The correct diagnosis was a hiatal hernia . . . ." R. at 298. Mr. Kalman then testified about both the hernia and the chest-wall trauma. R. at 301-05. At the end of the testimony, when asked whether there was anything else Mr. Kalman wished to cover, his representative stated: "No, I don't think there is any other issue. Although we thought there was in the beginning." R. at 305.

In its September 2002 decision, the Board referred the hiatal-hernia claim to the RO because no rating decision had been issued on that claim. R. at 2. The Board dismissed the claims of service

connection for psoriasis and obsessive-compulsive personality disorder and the claim for a compensable evaluation for residuals of anterior-chest-wall trauma "without prejudice," finding that Mr. Kalman had withdrawn those claims. R. at 4. In doing so, the Board found that Mr. Kalman "essentially asserted" that service connection for hiatal hernia was warranted and that was "the only issue remaining." *Id.* The Board also noted that, at the hearing before the Board, Mr. Kalman addressed only the issue of service connection for the hiatal hernia and, when asked whether there were any other issues, Mr. Kalman's representative stated: "No, I don't think there is any other issue." *Id.*

## II. ANALYSIS

When reviewing the question of a claimant's withdrawal of an appeal to the Board, the Court must take into consideration "the nonadversarial setting of the [VA] claims adjudication process," *Isenbart v. Brown*, 7 Vet.App. 537, 541 (1995), during which VA is required to construe liberally all submissions by a claimant, *see EF v. Derwinski*, 1 Vet.App. 324, 326 (1991); *see also Verdon v. Brown*, 8 Vet.App. 529, 533 (1996) (holding that when it is ambiguous whether a claim is withdrawn in a written letter, "it is not sufficient for the Board to conclude there was an abandonment without providing an adequate statement of reasons or bases to support that conclusion"); 38 C.F.R. § 20.202 (2004) (arguments within the Substantive Appeal to Board will be construed "in a liberal manner for purposes of determining whether they raise issues on appeal"). The Board's determination on whether Mr. Kalman's January 2002 response to the RO constituted a withdrawal of his appeal is a finding of fact that the Court reviews under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4) (Court shall "hold unlawful and set aside" clearly erroneous factual findings ). *Cf. Hanson v. Brown*, 9 Vet.App. 29, 32 (1996) (applying "clearly erroneous" standard of review involving withdrawal of a claim at the RO). "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). If the Board's "'account of the evidence is plausible in light of the record viewed in its

entirety, the court of appeals may not reverse it.'" *Gilbert*, *supra* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).

At the time of the Board hearing in this case, the regulations provided that an appeal could be withdrawn only in a writing, submitted prior to the Board's promulgated decision and, if an appeal was filed by the claimant, an authorized representative could submit a withdrawal on his behalf only if he had the "express written consent" of the claimant. 38 C.F.R. § 20.204(b), (c) (2002). In finding that Mr. Kalman effectively withdrew his claims for service connection for psoriasis and obsessive-compulsive personality disorder and the claim for a compensable evaluation for residuals of anterior-chest-wall trauma, the Board relied on (1) Mr. Kalman's January 2002 letter stating that "the only issue remaining" was for a compensable evaluation for residuals of anterior-chest-wall trauma, (2) the statements by Mr. Kalman and his representative at the Board hearing that there were no other issues than the issue of service connection for a hiatal hernia, and (3) the failure of Mr. Kalman or his representative to address the other claims during the Board hearing. R. at 4.

The reference in Mr. Kalman's letter to "the only issue remaining" must be understood in its context. Mr. Kalman's letter and comment were in response to the RO's January 2002 letter to him in which the RO explicitly noted that the issues of service connection for psoriasis and for obsessive-compulsive personality disorder and the claim for a compensable rating for residuals of the service-connected anterior-chest-wall trauma were perfected for appeal. The RO then stated that the only issue that remained regarding the appeal was whether Mr. Kalman wanted a Travel Board or video-conference hearing. His response never stated that he was withdrawing his appeal or any portion thereof, and it was never recognized as such prior to the Board decision. The Board decision reflects the issues on appeal as entitlement to service connection for psoriasis and for obsessive-compulsive personality disorder and a compensable evaluation for residual anterior-chest-wall trauma. R. at 1. If Mr. Kalman's response had effected a withdrawal of these issues, then they would not have been before the Board. "When claims are withdrawn, they cease to exist." *Hanson*, 9 Vet.App. at 32.

The Board's reliance on the oral statements of Mr. Kalman or of his representative to serve as a withdrawal of his appeal or any portion thereof is also misplaced. First, the regulations in effect did not recognize an oral statement as a permitted means to withdraw an appeal. *See* 38 C.F.R. § 20.204(b). Second, since Mr. Kalman filed his own appeal to the Board, a withdrawal of that

4

appeal presented by his representative could be effective only if based on Mr. Kalman's "express written consent", and there is no evidence that such consent was ever given. *See* 38 C.F.R. § 20.204(c). Third, the statements that there were no other issues simply does not rise to a withdrawal of an appeal. *Cf. Isenbart*, 7 Vet.App. at 541 (holding that the words "no additional issues" spoken at RO hearing do not provide "the formality or specificity" required to constitute a withdrawal under 38 C.F.R. § 20.204(a)). At best, a comment at the Board hearing that there are no other issues means that the case is submitted on the record, particularly given that a Board hearing is entirely the veteran's choice. *See generally* 38 U.S.C. § 7104(a) (Board will afford claimant a hearing); 38 C.F.R. § 20.700 (2004) (hearing granted upon claimant's request). Finally, the Court notes that at the hearing both Mr. Kalman and his representative made repeated references to the events surrounding his anterior-chest-wall trauma and the residual effects thereof, thereby contradicting any finding that an appeal of this issue had been abandoned or withdrawn. *See* R. at 298-300.

Considering the above deficiencies in the Board's decision, on the record as a whole, the Court is left with the definite and firm conviction that the Board erred and that its decision is not plausible. Therefore, the Court holds that the Board's determination that Mr. Kalman withdrew his appeal is clearly erroneous, *see Gilbert*, *supra*, and the decision will be reversed. *See* 38 U.S.C. § 7261(a)(4).

The Secretary urges the Court to affirm because the Board's decision is supported by a plausible basis in the record. In making this argument, however, the Secretary relies upon a version of the regulations promulgated after the Board's September 2002 decision. *See* Secretary's Br. at 5-8; *see also* Board of Veterans' Appeals: Rules of Practice–Appeal Withdrawal, 68 Fed. Reg. 13,235 (March 19, 2003); *compare* 38 C.F.R. § 20.204 (2004) *with* 38 C.F.R. § 20.204 (2002); R. at 1. The Secretary does not indicate why he believes the newly promulgated regulation is applicable in this case. In light of the Court's reversal of the Board's decision based on the regulation in effect at the time of the purported withdrawal of Mr. Kalman's appeal, there is no need to address the new regulation further.

On remand, Mr. Kalman will have the opportunity to present any additional evidence and argument in support of his claims, and the Board must consider any evidence and argument so

presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court expects that the Secretary will provide expeditious treatment of this matter on remand. *See* 38 U.S.C. § 7112.

### III. CONCLUSION

Upon consideration of the foregoing, the decision of the Board as to Mr. Kalman's claims of service connection for psoriasis and obsessive-compulsive personality disorder and the claim for entitlement to a compensable evaluation for residuals of anterior-chest-wall trauma is REVERSED, the appeal to the Board as to those claims is reinstated, and the matter is REMANDED for proceedings consistent with this opinion. The Board's decision to refer the hiatal-hernia claim to the RO is undisturbed.

REVERSED and REMANDED.